UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BOBBY W. SWINDLE, JR.
TRACY A. SWINDLE as administrators
of the Estate of MORGAN TAYLOR SWINDLE

CIVIL ACTION

VERSUS

NO. 06-837-JJB

LIVINGSTON PARISH SCHOOL BOARD;
RANDY POPE,
SUPERINTENDENT OF LIVINGSTON PARISH SCHOOL BOARD;
CECIL PICARD,
LOUISIANA DEPARTMENT OF EDUCATION
STATE BOARD OF ELEMENTARY AND SECONDARY EDUCATION

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs, Bobby and Tracy Swindle ("the Swindles") filed a complaint under §1983 for damages in this Court on October 30, 2006 on behalf of their daughter, Morgan Swindle.[1] In that complaint, plaintiffs assert that Livingston Parish School Board ("LPSB" or " the School Board") and Superintendent Randy Pope ("Pope") have policies in place that violate state educational law and that the Louisiana Department of Education ("DOE"), the State Board of Elementary and Secondary Education ("BESE"), and Mr. Picard[2] (collectively "the State Defendants") have a statutory and constitutional duty to oversee the school board. The Swindles allege that their daughter's constitutional rights were violated when (1) Livingston Parish School Board would not make alternative education available to Morgan after she was expelled during her eighth grade year and (2) the Parish refused to consider Morgan's home schooling in evaluating her possible grade placement after the end of her expulsion.

---

[1] Doc. 1.
[2] Mr. Picard is deceased. His successor, Mr. Paul Pastorek, has not been substituted as a party defendant.

1

Pope, the State Defendants, and the School Board have each filed motions for summary judgment.[3] Plaintiffs have filed oppositions[4] and each defendant has filed a reply.[5] Oral argument with respect to these motions is not necessary. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331 *et seq*.

## Background

Morgan Swindle, an eighth grade student in the Livingston Parish School System, was expelled from Doyle High School for committing "any other serious offense."[6] After Morgan's expulsion, plaintiffs attempted to have Morgan placed in an alternative education program, but were allegedly informed that alternative education would not be made available to their child.[7] Thereafter, plaintiffs decided to home school Morgan. In January 2006, plaintiffs received approval from the Louisiana Department of Education as to the home school program.[8] After Livingston Parish School Board

---

[3] Docs. 223, 224, & 225, respectively.

[4] Docs. 227, 233, & 229, respectively.

[5] Docs. 237, 235, & 236, respectively.

[6] The cause of the expulsion was Morgan's decision to leave a school dance with four other students. After leaving the dance, drug use occurred. Plaintiffs maintain that Morgan did not participate in drug use and shortly thereafter tested negative for marijuana. According to the factual history set out by the First Circuit Court of Appeal of Louisiana, Morgan "admitted to leaving a school function, smoking marijuana with other students and returning to the school function under the influence." B.W.S., Jr., T.A.S., as administrators of the estate of M.T.S. v. Livingston Parish School Board, et al., 960 So.2d 997, 998 (La. App. 1st Cir., 2007). Plaintiff argues that expulsion is not a proper punishment for "any other serious offense" by the terms La R.S. 17:416(A)(3)(xvii); however, expulsion is an allowable punishment upon recommendation of the principal. *See* La. R.S. 17:416(B)(1)(a) ("Any student after being suspended for committing any of the offenses enumerated in this Section may be expelled, upon recommendation by the principal of the public school in which said student is enrolled…").

[7] Doc. 1, ¶17.

[8] Although the Board of Elementary and Secondary Education approves home study programs, it appears approval of home school applications by the BESE occurs as a matter of course. Under Louisiana Revised Statute 17:236.1(B): "The initial application…shall be approved if the parent certifies that the home study program will offer a sustained curriculum of quality at least equal to that offered by public schools at the same grade level." In its memorandum in support of summary judgment, the School Board states that "approval of the home study program is mandatory on the part of BESE, provided the parent certifies that the quality of the proposed home study program will offer a sustained curriculum of quality at least equal to that offered by public schools at the same grade level." Doc. 225-21, pages 12-13.

2

refused to provide the curriculum, the plaintiffs obtained the curriculum from another source.

Plaintiffs then sought to have Morgan take the LEAP test. The School Board initially refused to administer the test to Morgan. Plaintiffs brought suit in the 21st Judicial District Court of Louisiana and received injunctive relief mandating that Morgan be allowed to take the test. Morgan took the LEAP test and passed, scoring at the achievement level of "mastery" in English and "basic" in Mathematics.[9]

Despite Morgan's scores on the LEAP and her home schooling, the LPSB declined to promote Morgan to the ninth grade upon her return to Doyle High School. After further litigation in state court, the school system was ordered to consider Morgan's home school work and determine whether Morgan should be advanced to the next grade.[10] LPSB evaluated Morgan and decided that she should not be advanced because she was 11 days short of the attendance requirement and had failed the math portion of another placement test administered by the School Board.[11] According to plaintiffs, "LPSB intentionally placed attendance as a prerequisite for M.S. to be placed in the 9th Grade which is in contravention of law."[12] Pursuant to an appellate court order, the state trial court held a hearing on February 9, 2007 in which it reviewed the School Board's evaluation and "stated that the School Board had reconsidered its evaluation of

---

[9] Doc. 1, ¶65.

[10] Doc. 1, ¶84.

[11] Doc. 1, ¶85 & 82. According to Pope's memorandum in support of summary judgment, the school system placed Morgan in the eighth grade "since it could not tell if the work presented was actually Morgan Swindle's and because she was eleven (11) days short of the required attendance…" Doc. 223-15, page 3.

[12] Doc. 1, ¶85. Plaintiff argues that "Livingston Parish had previously asserted a policy of placing expelled students back into the grade from which they were expelled from in contravention of law." Doc. 1, ¶92. Although this Court recognizes that under the statutes discussed below, a school system is required to place a child in the *appropriate* grade, we fail to see how placement in a *particular* grade is required by law.

the Swindle home schooling and the child's placement in light of the testimony and evidence introduced."[13] According to the court of appeal, the trial court "found that a thorough evaluation was performed by the School Board and that it determined that grade placement should be for the eighth grade as the student did not receive adequate instruction and work for the eighth grade."[14]

Plaintiffs filed this Complaint for damages arising from the denial of Morgan's constitutional rights and emotional distress, costs associated with home schooling, litigation expenses from the state and federal proceedings, attorney fees, and other relief deemed to be equitable and proper by this Court.[15] Plaintiffs assert that they are "entitled to damages for violations of [Morgan's] right to public education."[16] Plaintiffs argue that Morgan's due process rights were violated when State Defendants denied her "the opportunity to be evaluated for placement after home schooling," and because State Defendants failed to oversee, supervise, and control the Livingston Parish School Board.[17] Plaintiffs further assert that LPSB deprived Morgan of "property and liberty rights" by expelling her "without offering alternative education and…refusing to recognize home schooling."[18]

---

[13] B.W.S., Jr., T.A.S., as administrators of the estate of M.T.S. v. Livingston Parish School Board, et al., 960 So.2d 997, 1001 (La. App. 1st Cir., 2007).
[14] *Id*.
[15] Doc. 1, ¶97.
[16] Doc. 1, ¶93.
[17] Doc. 1, ¶88-90.
[18] Doc. 1, ¶94.

**Analysis**

<u>Plaintiffs' claims under 42 U.S.C. §1983[19]</u>

In order for plaintiffs to have a cognizable claim under §1983, they must first assert the violation of a federal constitutional or statutory right. Plaintiffs assert that their daughter's constitutional rights were violated when she was expelled, denied alternative education, and denied promotion to the ninth grade based on her home schooling and LEAP test scores. All defendants assert in their motions for summary judgment or their responses to plaintiffs' oppositions that plaintiffs have failed to assert the violation of a constitutional right.

<u>Procedural due process</u>

1. Morgan's expulsion

Although there is no constitutional right to a public education,[20] once a state creates a public school system and requires attendance at those schools, a protectable property interest arises.[21] Thus, "the State is constrained to recognize a student's

---

[19] 42 U.S.C. §1983 sets out:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

[20] As the Supreme Court explained in *San Antonio Independent School Dist. V. Rodriguez*:
> Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected. As we have said, the undisputed importance of education will not alone cause this Court to depart from the usual standard for reviewing a State's social and economic legislation.

411 U.S. 1, 35 (1973).

[21] *See* Whiteside v. Kay, 446 F.Supp. 716, 719 (W.D. La. 1978) (internal citation omitted), in which the court explained:
> When state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Louisiana law creates a right to a public education. The suspension or expulsion of a child

5

legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."[22] Morgan clearly has a property interest in receiving a public education.[23] Under due process protections, that interest cannot be taken away without proper procedural safeguards. However, "the Louisiana statutory procedure for expulsion…is fundamentally fair, in line with *Goss v. Lopez*, *Mathews v. Eldridge*, and *Board of Curators of the University of Missouri v. Hororitz*."[24] Here, plaintiffs do not argue that the procedures used prior to Morgan's expulsion differed from those required by state statute.[25] As those procedures have

---

deprives the child of property and liberty rights, as it may limit later opportunities for the child; thus, such disciplinary action must be attended by due process safeguards.

[22] Goss v. Lopez, 419 U.S. 565, 574 (1975).

[23] "Louisiana has created a public school system, which requires that children attend school. Therefore, plaintiffs and their son have a protectable property interest in his receiving an education." Scott v. Livingston Parish School Board, et al., 548 F.Supp.2d 265, 267 (M.D. La., 2008).

[24] Whiteside v. Kay, 446 F.Supp. 716, 721 (W.D. La. 1978) (internal citations omitted); *see also* McCall v. Bossier Parish School Board, 785 So.2d 57 (La. App. 2nd Cir. 2001). Under Louisiana Revised Statute 17:416, the school principal must advise the student of his or her alleged misconduct, and give the student an opportunity to explain his version of the incident. Then a conference with the principal and the student's parent or tutor is scheduled. For certain offenses punishable by suspension, the principal may recommend expulsion. If expulsion is recommended, a hearing is conducted by the superintendent or the superintendent's designee. The superintendent determines whether expulsion is warranted. The student is allowed to be represented by any person of his choice at this hearing. Within five days of the superintendent's decision, the student's parent or tutor may request review by the city or parish school board. The school board has the power to affirm, modify, or reverse the action of the superintendent. Within ten days of the school board's review, the student's parent or tutor may appeal to the district court.

In his memorandum in support of summary judgment, Pope sets out the procedure he claims was afforded Morgan:

> Morgan and her parents were afforded written notice of the recommendation for expulsion and a hearing took place regarding same. The hearing officer, Paulette Foster, conducted the hearing and then forwarded to the Superintendent, Randy Pope, the tapes of the hearing, as well as the disciplinary forms, etc. Pope then reviewed all of the documentation before making the decision to affirm the recommendation for expulsion, which decision was then communicated to the Swindles…Thereafter, the Swindles failed to exercise their right to appeal Pope's decision to the School Board…

Doc. 223-15, page 4. In their reply to Pope's opposition, plaintiffs do not address this series of events.

[25] In plaintiffs' opposition to Pope's motion for summary judgment, they seem to argue that the process was faulty because they were not informed until the hearing that the recommended expulsion period had been changed from the rest of the school year to twelve months. Doc. 227, page 3. However, the Swindles failed to appeal this change

been deemed to satisfy procedural due process requirements, this Court holds that plaintiffs have not stated a procedural due process violation based solely on Morgan's expulsion.

2. Entitlement to Alternative Education

However, plaintiffs also argue that Morgan had a property interest in receiving an alternative education after she was expelled. Defendants argue in opposition that "there is no protected property interest in a particular kind of education"[26] and that Morgan was only entitled to "adequate due process…not an absolute right or entitlement to a public education that cannot be rescinded under any circumstances."[27]

"Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling citizens to certain benefits."[28] In *Arundar v. DeKalb County School District*, the Fifth Circuit held that in the absence of a state statute or other rule entitling plaintiff to a particular course of study, "plaintiff's wishes with respect to a particular curriculum choice…do not, under *Goss* amount to a 'property' interest for Fourteenth Amendment purposes."[29] While the plaintiff in *Arundar*

---

to the parish school board. Further, "all that is constitutionally required of notice of an expulsion hearing is that students receive 'a statement of the charge against them'" Craig v. Selma City School Board, 801 F.Supp. 585, (S.D. Al., 1992) (quoting Nash v. Auburn University, 812 F.2d 655, 663 (11th Cir. 1987)). The Swindles do not assert that they were unaware of the charge against Morgan (instead they argue they were not notified in writing of a change in the number of months of expulsion) or that the procedure used was not fundamentally fair.

[26] Pope's memorandum in support of his motion for summary judgment, Doc. 223, page 16. *See also* State Defendants' Reply to plaintiff's opposition to State Defendants' motion for summary judgment, Doc. 235, pages 5-6; School Board's memorandum in support of summary judgment, Doc. 225-21, pages 10-16.

[27] State defendants' reply to plaintiff's opposition to state defendants' motion for summary judgment, Doc. 235, page 5.

[28] Goss v. Lopez, 419 U.S. 565, 572 (1975) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

[29] 620 F.2d 493, 494 (5th Cir., 1980). In *Nevares v. San Marcos Consolidated Independent School District*, the court explained:

7

could not point to any statute or other rule giving rise to a property interest, the Swindles point to Louisiana Revised Statute 17:416.2(A) which states in part:

> Any student suspended or expelled from school pursuant to the provisions of R.S. 17:416…shall remain under the supervision of the governing authority of the city, parish, or other local public school system taking such action using alternative education programs for suspended and expelled students approved by the State Board of Elementary and Secondary Education….[30]

In response, defendants point out a later subsection of the same statute which allows a school system which is

> Unable to comply with the provisions of Subsection A of this Section for economically justifiable reasons as defined by the State Board of Elementary and Secondary Education may apply to the board on a school year to school year basis for waiver from the requirements of these provisions.[31]

Here, the state statute may potentially give rise to a property interest in alternative education. If such a property interest does exist, then Morgan would indeed be entitled to due process before being denied alternative education. However, the statute also allows for school systems to obtain a waiver when unable to comply with the requirement of providing alternative education. In this case, no waiver was in effect for the 2005-2006 school year at the time of Morgan's expulsion.[32] Thus, the Swindles

---

> This court has also rejected arguments that there is any protected interest in the separate components of the educational process, such as participation in interscholastic athletics. The Tenth Circuit has held that a student does not have a constitutional right to particular incidents of education such as sports or attending a particular school.

111 F.3d 25, 27 (5th Cir., 1997) (internal citations omitted).

[30] La R.S. 17:416.2(A)(1).
[31] La R.S. 17:416.2(B)(1).
[32] As Pope notes in his memorandum in support of summary judgment, "It is not disputed that, at the time of Morgan Swindle's expulsion, the School Board did not have a waiver from the DOE for the provision of alternative education. The denial of such to Morgan, however, was based on the fact that it was believed that such was in

argue that at the time of Morgan's expulsion, a vested property interest in alternative education existed.

In his memorandum in support of summary judgment, Mr. Pope asserts that "since 1995, the Livingston Parish School System has received a waiver from the Louisiana Department of Education for the provision of alternative education."[33] Further, Pope asserts that upon plaintiffs' request for alternative education, the School Board realized it had failed to obtain a waiver for that year, applied for one, and was granted a waiver effective for the entire school year.[34] Plaintiffs argue that such a retroactive waiver has no effect on Morgan's vested property rights and further that the waiver was granted illegally, without the Board considering the statutorily required factors.[35] Plaintiffs cite no case law or statute for the proposition that the Board's waiver was illegally granted, and we decline to make a finding one way or another on that issue. However, the existence of a waiver for the years prior to Morgan's expulsion indicates that a property interest in alternative education did not arise. Indeed, prior to the year of Morgan's expulsion, the pattern and practice in the district was to obtain a waiver from the requirement of providing alternative education to expelled students. Thus, the expectation created both by the statute and the district's actions under that statute resulted in the expectation that no alternative education was available in Livingston

---

place as it had been every school year since 1995." Doc. 223-15, page 16. A waiver of La. R.S. 17:416.2, the statute requiring alternative education, was granted by the BESE on April 20, 2006. Doc. 225-12, page 42.

[33] Doc. 223-15, page 5. Plaintiffs do not argue that this assertion is incorrect.

[34] According to Patricia Merrick, who testified on behalf of the DOE and the BESE, "it was BESE procedure to accept waiver requests on a monthly basis." Doc. 223-11, page 10.

[35] In the plaintiffs' complaint, they assert that "the evaluation of the waiver application performed by BESE does not comply with law and its own policies. Moreover, if BESE grants a waiver, it is then responsible to the children of the school system for which it grants a waiver. BESE has refused this responsibility and is not providing Alternative Education to children of school systems to which it grants a waiver." Doc. 1, ¶48.

9

Parish. Therefore, the Court finds that no protectable property interest arose in alternative education.

   3. Entitlement to Particular Grade Placement

Finally, plaintiffs seem to assert that Morgan had a protectable property interest in progression to the ninth grade based on her LEAP test scores and home schooling.[36] However, the Swindles cite no law or practice that would potentially give rise to a property interest in progression to a particular grade. Instead, it seems that state law only creates a reasonable expectation that students involved in approved home schooling programs will be evaluated for placement in public school.[37] Thus, we find that no protectable property interest arose in Morgan's progression into the ninth grade.

<u>Substantive due process</u>

In addition to procedural due process claims, plaintiffs also assert violations of Morgan's substantive due process rights. As previously explained, the right to public education in general, as well as the more specific right to alternative education or particular grade placement, are rights not specifically protected by the Constitution. As such, these claimed violations are subject to "rational basis" scrutiny.[38]

---

[36] In their complaint, Plaintiffs assert that Morgan's constitutional rights were violated when the Parish failed to consider Morgan's home schooling when evaluating her for grade placement. The plaintiffs sought an injunction in state court and the Parish subsequently reviewed Morgan's home schooling. Despite the consideration of home schooling, the Parish still determined that Morgan should be placed in the eighth rather than ninth grade. Thus, plaintiffs complaint with regard to Morgan's home schooling seems to arise not from the evaluation itself, but the results of that evaluation, namely their child's grade placement.

[37] *See* La. R.S. 17:236.2 (addressing admission to public school from approved home study program).

[38] *See* Craig v. Selma City School Board, 801 F.Supp. 585, 594-595 (S.D. Al. 1992) (internal citations omitted), in which that court explained:
> Because the right to obtain a public education is not explicitly granted to American citizens by the language of the federal constitution and has never been recognized as "fundamental" by the Supreme Court, state action infringing on a person's right to obtain a public education is not unconstitutional under substantive due process analysis as long

1. Expulsion and Alternative Education

The Parish certainly has a legitimate interest in ensuring school functions are drug free, and the expulsion of a student after her involvement in drug-related activity outside a school-sponsored dance is rationally related to that interest. Further, the Parish's decision to obtain a waiver from the requirement of providing alternative education to expelled students was not "arbitrary" or "lacking a rational basis,"[39] as such a waiver is contemplated by the statute itself in cases of economic hardship. Therefore, we find no substantive due process violation occurred in either Morgan's expulsion or the denial of alternative education.

2. Morgan's Grade Placement

Finally, the Parish has a legitimate interest in requiring students, even those participating in approved home schooling programs, to attend or participate in school a certain amount of the year.[40] The Parish's attendance/expulsion policy is not arbitrary in light of this interest.

Under the Pupil Progression Plan for Livingston Parish Schools, the Parish determines proper grade placement based on copies of the student's work, standardized tests, attendance, books and materials used, an outline of the subjects taught through home schooling, third party statements, and other evidence including

---

as that action is directed to a legitimate purpose and is rationally related to achieving that purpose.
See also Butler v. Rio Rancho Public Schools Bd. Of Educ., 341 F.3d 1197, 1200 (10th Cir. 2003) (" we will uphold a school's decision to suspend a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges."); Remer v. Burlington Area School Dist., 149 F.Supp.2d 665, 671 (E.D. Wi. 2001) ("requirements of substantive due process (as opposed to procedural due process) require that the student's right to an education not be withdrawn arbitrarily.").

[39] See Butler vv. Rio Rancho Public Schools Bd. Of Educ., 341 F.3d 1197, 1200 (10th Cir. 2003).
[40] See La. R.S. 17:221 (setting out school attendance requirements).

11

possibly a competency-based education examination.[41] Under the progression plan, "attendance requirements and/or expulsion supercedes (sic) promotion placement."[42] Therefore, it appears that the Parish has set forth a policy that attendance requirements will "trump" other progression criteria, including performance on standardized tests.

Although the Swindles argue that the Parish's policy is arbitrary,[43] the Court finds that such a policy falls within the reasonable bounds of the Parish's discretion and as such it is outside the purview of this Court to review.[44] Because we find that the Parish's placement of Morgan was related to its interest in attendance and because we defer to the School Board's discretion in setting forth its goals as stated in the Pupil Progression Plan, we find that no substantive due process violation occurred.[45]

---

[41] Exhibit AR, Doc. 232-12, page 15.

[42] *Id*. Plaintiffs argue that "the LPSB policy 'expulsion supersedes promotion' foreclosed MS from her property right to a public education." Opposition to School Board's motion for summary judgment, Doc. 229, page 8.

[43] Such an assertion seems to be more properly classified as a substantive due process challenge. Plaintiffs assert that "the definitive of the level of the student's proficiency in mathematics, English/language arts, and social studies *should* be determined by the LEAP scores of that student." Doc. 1, ¶75 (emphasis added). However, the applicable statutes clearly allow a school board to supplement the basic requirements set out by the BESE with progression requirements in line with local goals and objectives. *See* La. R.S. 17:236.2.

[44] As the Court in *Wood v. Strickland*, 420 U.S. 308, 326 (1975) (internal citations omitted) explained:
> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. But s 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and s 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

Further, pursuant to La. R.S. 17:24.4(G)(2), pupil progression plans "shall be based upon local goals and objectives which are compatible with the Louisiana Competency-Based Education Program…and which supplement the performance standards approved by the State Board of Elementary and Secondary Education." The statute goes on to state that "each local school board shall establish a policy regarding student promotion or placement." La. R.S. 17:24.4(G)(3)(b). Thus, Livingston Parish's pupil progression plan may be tailored to local goals and objectives as long as those goals and objectives are compatible with generally set state performance standards.

[45] While not made explicit in plaintiffs' complaint, the Swindles also seem to assert that Morgan's rights under the equal protection clause of the 14th amendment were potentially violated because another student whose expulsion arose out of the same incident did receive access to alternative education. However, defendants assert that this other student received alternative education because such education was federally mandated by the

Attorney's fees under 42 U.S.C. § 1988

Both plaintiffs and the Livingston Parish School Board assert an entitlement to attorney's fees under 42 U.S.C. § 1988.[46] While the fee-shifting provision found in § 1988 "is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory."[47] However, when a plaintiff is unsuccessful in his §1983 claim, as plaintiffs are here, he "'should not be assessed his opponent's

---

IDEA. See 20 U.S.C. §1412(a)(1)(A) ("A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school."). Plaintiffs do not contest that this other student was hearing disabled. The Supreme Court has previously explained that the equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202 (1982)). Here, it appears that Morgan and the other expelled student were not "similarly situated" in light of federal protections afforded the other student based on her disability. Thus, plaintiffs have not shown a cognizable equal protection violation.

Additionally, State Defendants' argue that "none of the violations alleged in the Complaint are attributable" to them, that plaintiffs' claim for equitable relief is moot, and plaintiffs' claim for monetary damages against them is barred by the 11th amendment and the terms of §1983. Motion for Summary Judgment, Doc. 224. In opposition, plaintiffs assert that the Louisiana constitution and various statutes place upon State Defendants the responsibility of supervising and controlling public school systems. Opposition to State Defendants' Motion for Summary Judgment, Doc. 233-3. Plaintiffs further argue that BESE failed to follow proper review procedures before issuing a waiver to the School Board. Id. This Court finds that the State Defendants' arguments have merit and therefore would grant State Defendants' motion for summary judgment based on the arguments asserted by State Defendants.

Finally, in his motion for summary judgment, Mr. Pope argues that suit against him should be dismissed based on the defense of qualified immunity. The Fifth Circuit has continuously recognized a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. First, viewing the facts in a light most favorable to the plaintiff, the court must determine if the plaintiff has alleged the violation of a constitutional right. Barrow v. Greenville Independent School District, 332 F.3d 844, 846 (5th Cir. 2003). If the first step is met, the court must next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005). The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law. Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).

Here, as based on our above analysis, the only clearly established constitutional right asserted by plaintiffs is the right to due process based on a property interest in public education. Plaintiffs have failed to establish a violation of due process occurred prior to Morgan's expulsion. The Court finds that there is not a property interest in alternative education or promotion. Thus, no constitutional violation of these rights occurred. Further, in light of the School Board's practice of obtaining a waiver and the clear policies set out in the Pupil Progression Plan, Mr. Pope's actions were not objectively unreasonable. Thus, it appears Mr. Pope would be entitled to qualified immunity with regard to suit against him in his personal capacity.

[46] Doc. 1, ¶96 & Doc. 28, page 2. Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs…").

[47] Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001).

attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless….'".[48] This Court does not find that plaintiffs' claims were frivolous or unreasonable, despite the fact that such claims ultimately have been deemed unsuccessful. Therefore, we deny the School Board's request for attorney's fees under § 1988.

## Conclusion

We find that plaintiffs have failed to state any constitutional violations upon which a § 1983 claim could be based. Because no constitutional violations occurred, we do not make a determination as to the *res judicata* effect of the state court proceedings. Accordingly, this Court **GRANTS** defendants' motions for summary judgment (docs. 223, 224, and 225) and **DISMISSES** plaintiffs' complaint.

Signed in Baton Rouge, Louisiana, on December 9, 2008.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[48] Hughs v. Rowe, 449 U.S. 5, 15 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)).